## Case No. 15,355.

### UNITED STATES v. HERMANCE et al.

[15 Blatchf. 6.] [1]

Circuit Court, S. D. New York. July 1, 1878. [2]

INTERNAL REVENUE LAWS—TAX ON SPIRITS—WHAT IS A PAYMENT—ABSCONDING COLLECTOR —LIABILITY OF SURETIES.

A distiller of brandy from fruits, paid to a deputy collector of internal revenue, money intended as the tax on such brandy, without receiving the proper stamps required by law to be affixed to the casks containing such brandy before it could lawfully be sold. The collector converted the money to his own use, and did not enter it on his books, or report or pay it to the United States. The collector did not prepare any stamps for the distiller, or furnish any to him. The collector absconded, and an acting collector was appointed. After that, and against the protest of the sureties on the official bond of the collector, the proper stamps were issued to the distiller, by the acting collector, by direction of the commissioner of internal revenue. In a suit against such sureties, by the United States, on such bond, to recover the amount of such money: *Held*, that the payment of the money

1 [Reported by Hon. Samuel Blatchford. Circuit Judge. and here reprinted by permission.]
2 [Affirming Case No. 15,356.]

to the deputy collector, without receiving stamps therefor, was not a payment of the tax on the brandy; that the money did not become public money in the hands of the collector; and that the sureties were not liable for it.

[Error to the district court of the United States for the Southern district of New York.]

[This was a suit by the United States against Henry L. Hermance and others, as sureties upon the official bond of a collector of internal revenue. The case is now before the court upon a writ of error.]

Stewart L. Woodford. U. S. Dist. Atty.
Peter Cantine, for defendants in error.

WAITE, Circuit Justice. This was an action upon the official bond of John P. Curtis as collector of internal revenue for the 13th collection district of the state of New York. The collector had absconded previous to the commencement of the suit, and process was served only upon his sureties. The facts are these: Four distillers of brandy from fruit, having in their respective distilleries brandy in casks, which had been duly gauged and reported, in the form required by law, to the collector and to the internal revenue department, went to the office of the collector to pay the taxes. He being absent and there being no stamps in the office signed, they each paid the deputy collector the amount of money which was required, and left, with the understanding that they were to receive the proper stamps at some future time. Upon making the payment they took from the deputy receipts in the following form, to wit: "United States Internal Revenue, Collector's Office, 13th District, New York, July 22, 1875. Received from Hiram Atkins, five hundred thirty four 80/100 dollars. for tax on 764 gallons cider brandy. at 70 cents per gallon, $534 80. J. P. Curtis. Collector, A. C. Norris, Deputy." The several payments were made July 22d, August 31st, September 15th, October 1st, and October 26th. 1875. On the 4th of November in the same year, Curtis, the collector. absconded, having converted the money thus paid to his own use, and never having entered it upon his books or reported it to the department. The distillers never received their stamps from him, and none were ever prepared for them by him. On the 9th of November the office of the collector was taken possession of by a duly authorized revenue agent. and he remained in charge until November 17th, when an acting collector was appointed. After this, against the protest of the sureties upon the bond. stamps were issued to the distillers by the acting collector, upon the direction of the commissioner of internal revenue, antedated as of November 16th, 1875. Upon this state of facts the district court gave judgment for the defendants [Case No. 15,356], and the judgment has been brought here for review by this writ of error.

The single question to be determined is, whether what was done between the distillers and the deputy collector, before the collector was suspended from office, amounted in law to a payment of the taxes upon the brandy in the possession of the distillers. If it did, the money in the hands of the collector was public money, to be accounted for and paid over only to the United States. But, until the payment of the taxes was complete, no such accountability arose.

The spirits in this case were distilled from fruit, and, therefore, under the operation of section 3255 of the Revised Statutes, resort must be had to regulations of the commissioner of internal revenue, approved by the secretary of the treasury, as well as to the acts of congress, to ascertain when the taxes could be paid and what must be done to effect a payment. Brandy distilled from fruit must be drawn into casks, each of not less capacity than ten gallons, wine measure, and must be retained at the designated place of deposit at the distillery, until the tax is paid thereon and the stamps are attached thereto. On the 25th of each month, the distiller is required to notify the collector of his district, in a particular form, of the probable number of packages that will be distilled by him during the month, and the probable number of wine gallons, with his request to have the same gauged and marked; and, on the receipt of such notice, and after the last day of the month, the collector is required to cause the brandy produced during the month to be gauged, proved and marked by a United States gauger. The gauger, upon receiving the order of the collector, must proceed at once to gauge, prove and mark each cask of such spirits that he may find in the distillery or designated place of deposit. and to cut upon the bung-stave of each cask the wine gallons, the proof and the proof gallons, and to cut or burn upon the head of each cask the name of such distiller, the district, the serial number of the cask, and the kind of spirits, and to mark thereon the date of the gauge, and the name of the gauger by whom made. placing such date and name on the head of the cask. in such way as to admit of the attaching of the tax-paid stamp between them. On completing his inspection, the gauger must immediately make report thereof in duplicate, according to a particular form, showing for whom gauged, and where, the number of casks, the serial number of each, the proof, the wine gallons and proof gallons of each, the kind of spirits and the amount of tax thereon, and sign the same, delivering one copy thereof to the distiller and transmitting one to the collector of the district. Reg. & Inst. Series 6, No. 7, p. 90. All stamps required for distilled spirits are engraved in their several kinds in book form, and are issued by the commissioner of internal revenue to collectors, upon their requisition, in such numbers as may be necessary. Each stamp has an engraved stub attached to it, with a number

corresponding with an engraved number on the stamp. The stub must not be removed from the book, and there must be entered upon it such memoranda of its corresponding stamp as may be necessary to preserve a perfect record of the use of the stamp detached. Rev. St. § 3312. On every stamp for the payment of tax on distilled spirits, there is engraved words and figures representing a decimal number of gallons, and on the stub corresponding a similar number of gallons, and between the stamp and the stub, and connecting them, are nine engraved coupons, which, beginning next to the stamp, indicate in succession the several numbers of gallons between the number named in the stamp and the decimal number next above. When a collector receives the tax on the distilled spirits contained in any cask, he must detach from the book a stamp representing the denominate quantity nearest to the quantity of proof spirits in the cask, as shown by the gauger's return, with such number of the coupons attached thereto as shall be necessary to make up the whole number of proof gallons in the cask. All unused coupons must remain attached to the stub, and no coupon is of any value when detached from the stamp. Section 3313. The books of tax-paid stamps issued to a collector are charged to his account at the full value of the tax on the number of gallons represented on the stamps and coupons contained in the book. Every collector must make monthly returns of all tax-paid stamps issued by him to be affixed to any cask or package containing distilled spirits on which the tax has been paid, and account for the tax collected. It is the duty of the collector to return to the commissioner the book of marginal stubs, as soon as the stamps are used. Section 3314. When taxes, as shown in the gauger's report, are paid upon spirits distilled from fruit, the collector is required to prepare tax-paid stamps of the proper denomination, with all the blanks filled up according to the facts appearing in the gauger's return, including the serial number of the cask to which each stamp is to be attached, which stamps must be signed by the collector, as well as by the gauger making the return, and delivered to the distillers. Reg. p. 91. This stamp must then be affixed to the cask by the distiller and cancelled. That being done, he is permitted to sell the spirits in the tax stamped packages, at the place of manufacture. (Reg. p. 92); but, until the tax is paid and the stamp is affixed, the packages cannot be removed or sold. When taxes are paid upon spirits distilled from grain, and an order is obtained for a withdrawal of the spirits from a warehouse, the collector cuts the tax-paid stamps from his book and they are affixed by the gauger to the casks, in the presence of the storekeeper, and the cask is branded in a particular manner.

From this statement it is apparent, that taxes can only be paid upon distilled spirits in casks which have been properly gauged and marked. The payment, too, must be of the tax upon the contents of each cask by itself, and for each payment a tax-paid stamp is to be issued, corresponding with the gauge and the marks of the cask to which it relates. The transaction is something more than the mere payment of a tax. In effect, it is the purchase from the collector, by the distiller, of stamps which must be affixed to the packages before the spirits they contain can be put upon the market and sold. It is of no importance that the price to be paid for the stamp is the amount of the tax upon the purchase to which it is to be affixed. The payment is of no avail to the distiller, for the purposes of trade, without the stamp. He cannot get the stamp until he pays the tax. Therefore, he pays the tax to get the stamp. The fruit distiller is permitted to take the stamp from the collector and affix it himself, and the gauger does the same thing for the grain distiller. To the distiller the stamp on the package is the essential thing. Without it his payment is of no use to him.

So long as the blank stamp remains in the book of stamps, and in the possession and under the control of the collector, it is a voucher to him, in his settlement of accounts with the government. He is charged with all stamps and coupons delivered to him and credited with such as he returns. The government has no means of knowing what his collections have been, except by taking an account of the stamps he has issued. Until then, a stamp has been, at least, prepared for issue, it would seem to be clear that the distiller might withdraw his money and leave his taxes unpaid. If this be so, the payment is not complete. So long as the distiller can control his money in the hands of the collector, it is held as bailee for him and not as public money of the United States.

The provision which requires the collector to detach the stamps from the book when he receives the tax, is part of the system of checks and balances, adopted for the security both of the government and the tax-payer. The distiller need not pay until he can obtain his stamps; and, as the issue of the stamps is the evidence upon which the government relies to show the amount for which the collector is accountable, good faith requires that payments should not be made except in the regular way.

In this case, the receipts taken from the deputy collector indicate no application of the money paid to specific casks of spirits. It is possible that the records of the office may have furnished evidence of the manner in which it was expected the distribution would be made, but none was actually made at the time, so far as the record discloses. If the payment had been made before the spirits were drawn into casks, or even before the casks were gauged, marked and re-

ported by the gauger, it could not be seriously contended that the money paid was public money in the hands of the collector. And the obvious reason is, that no application of the payment could then be made. From this it would seem to follow, that actual application was essential to the completion of any payment of taxes upon distilled spirits, and that, as the law has only provided one way in which the collector can bind the government by his application, to wit, by filling up and detaching the appropriate stamp from his book, a payment could not be complete until this was done. This is in accordance with the analogies of the law. As has been seen, the payment of a tax upon distilled spirits is, in effect if not in reality, the purchase of the stamp which is to make the payment available, and as a purchase would not be complete until the stamp had been put in a condition by the collector to be affixed to the cask, or, at least, until it had been legally designated and set apart for that purpose, it is not unreasonable to require the same things to be done before the payment shall be considered complete. The object of the payment, so far as the distiller is concerned, is to enable him to control and dispose of his property. This he cannot do until he is in a condition to attach to it the instrument which the law has made the only evidence that it may lawfully be put upon the market. He ought not to be bound by his payment, therefore, until his right to control this evidence is complete. That certainly cannot be until all has been done by the collector which is necessary to fit the evidence for use, and it has been legally set apart for that purpose. That was not done in this case before the defaulting collector was removed from his office, and it is not claimed that the sureties can be held by what was done afterwards. Judgment affirmed.